UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. _____

UNITED STATES OF AMERICA,

Plaintiff,

v.

HONEYWELL INTERNATIONAL, INC., and

INTERNATIONAL PAPER CO.,

Defendants.

**COMPLAINT**

The Plaintiff, the United States of America, on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), by its undersigned attorneys, alleges as follows:

## STATEMENT OF THE CASE

1. This is a civil action under Sections 106 and 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9606 and 9607, and Section 7003 of the Resource Conservation and Recovery Act ("RCRA), 42 U.S.C. § 6973. The United States seeks to recover costs incurred and to be incurred in conducting actions in response to the release or threatened release of hazardous substances at or from the LCP-Holtrachem Superfund Site ("Site") in Riegelwood, Columbus County, North Carolina. The

1

United States also seeks injunctive relief requiring the Defendants to perform certain response actions at the Site consistent with the national contingency plan, 40 C.F.R. Part 300, as well as certain actions necessary to alleviate the imminent and substantial endangerment to health or the environment relative to the release and/or threatened release of solid and/or hazardous wastes at the Site, pursuant to RCRA.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter of this action, and the parties hereto, pursuant to 42 U.S.C. §§ 9606 and 9613(b), 42 U.S.C. § 6973(a), and 28 U.S.C. §§ 1331 and 1345.

3. Venue is proper in this district under 42 U.S.C. §§ 9606(a) and 9613(b), 42 U.S.C. § 6973, and 28 U.S.C. § 1391(b), because the release and/or threatened release of hazardous substances that give rise to this complaint occurred in this district and because the Site is located in this district.

## DEFENDANTS

4. Honeywell International, Inc. ("Honeywell") is a corporation organized under the laws of Delaware with its corporate office located at Morristown, New Jersey. It is the successor to Allied Chemical Corp., which owned and operated the Site from 1963 to 1979. In 1985, Allied Chemical Corp. merged with the Signal

2

Company to create AlliedSignal, Inc.. AlliedSignal acquired Honeywell, Inc. by merger in 1999, and the surviving corporation became Honeywell International, Inc.. Although Allied Chemical Corp. sold the Site in 1979, Honeywell acquired it by special warranty deed on May 9, 2006, and presently owns the Site.

5. International Paper Co. ("International Paper") is a corporation organized under the laws of New York with its corporate office located at Memphis, Tennessee.

6. The Defendants are "persons" as defined in Section 101(21) of CERCLA, 42 U.S.C. § 9601(21) and Section 1004(15) of RCRA, 42 U.S.C. § 6903(15).

## STATUTORY FRAMEWORK

7. CERCLA was enacted in 1980 to provide a comprehensive governmental mechanism for abating releases and threatened releases of hazardous substances and other pollutants and contaminants and for funding the costs of such abatement and related enforcement activities, which are known as "response actions." 42 U.S.C. §§ 9604(a), 9601(25).

8. Under Section 104(a)(1) of CERCLA:

> Whenever (A) any hazardous substance is released or there is a substantial threat of such a release into the environment, or (B) there is a release or substantial threat of release into the environment of any pollutant or contaminant which may present an imminent and substantial danger to the public health or welfare, the President is authorized to act, consistent with

3

the national contingency plan, to remove or arrange for the removal of, and provide for remedial action relating to such hazardous substance, pollutant, or contaminant at any time (including its removal from any contaminated natural resource), or take any other response measure consistent with the national contingency plan which the President deems necessary to protect the public health or welfare or the environment . . . .

42 U.S.C. § 9604(a)(1).

9. For CERCLA response actions and enforcement purposes, the Administrator of EPA is the President's delegate, as provided in operative Executive Orders, and, within certain limits, the Regional Administrators of EPA have been re-delegated this authority, which has been further re-delegated to the Director of the Superfund Division.

10. Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides:

Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this Section —
(1) the owner and operator of a vessel or a facility,
(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of, . . . from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for —
   (A) all costs of removal or remedial action incurred by the United States Government . . . not inconsistent with the national contingency plan;

11. Section 106(a) of CERCLA, 42 U.S.C. § 9606(a), provides in pertinent part:

[W]hen the President determines that there may be an imminent and substantial endangerment to the public health or welfare or the environment because of an actual or threatened release of a hazardous substance from a

4

facility, he may . . . secure such relief as may be necessary to abate such danger or threat . . . .

12. Section 106(a) of CERCLA, 42 U.S.C. § 9606(a), authorizes the United States to bring an action to secure such relief as may be necessary to abate a danger or threat at the Site.

13. Section 7003(a) of RCRA, 42 U.S.C. § 6973(a), provides in pertinent part:

"[U]pon receipt of evidence that the past or present handling, storage, treatment, transportation or disposal of any solid waste or hazardous waste may present an imminent and substantial endangerment to health or the environment, the Administrator may bring suit on behalf of the United States in the appropriate district court against any person (including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility) who has contributed or who is contributing to such handling, storage, treatment, transportation or disposal to restrain such person from such handling, storage, treatment, transportation, or disposal, to order such person to take such other action as may be necessary, or both."

## GENERAL ALLEGATIONS

14. The LCP-Holtrachem Superfund Site sits on approximately 24 acres adjacent to the Cape Fear River at 636 John Riegel Road in Riegelwood, Columbus County, North Carolina.

15. In 1963, Allied Chemical Corp. ("Allied") developed the Site as an industrial chlor-alkali manufacturing facility. The plant was originally constructed to provide chlorine gas, caustic soda, and bleach to the adjacent International Paper facility. Other products were sold or were used in-house. During operations,

5

various chemicals were produced at the plant using a mercury electrolytic cell process. These chemicals included caustic liquid (sodium hydroxide), liquid chlorine, hydrogen gas, liquid bleach (sodium hypochlorite), and hydrochloric acid. Allied operated the Site until 1979. From 1979 until approximately 2000, other entities operated the Site. Honeywell is the current owner of the Site. International Paper owns property contiguous to the Site on which it operates a paper and pulp mill.

16. The State of North Carolina completed a Preliminary Assessment of the Holtrachem facility on September 11, 1987. The contaminants of concern identified at the Site included mercury and the PCB known as Aroclor-1268.

17. Throughout the 1980s and 1990s, the State of North Carolina entered into several voluntary orders with Site operators for corrective actions to address waste handling and disposal violations at the Site. Many of these problems remained when operations ceased at the Site in approximately 2000.

18. In July 2002, EPA signed an Enforcement Action Memorandum for a time-critical removal action, which Honeywell performed under an EPA administrative order. The removal action began in January 2003. Honeywell dismantled its mercury cell building and associated piping, encapsulated mercury-contaminated debris prior to off-site disposal, and reclaimed over 34,000 pounds of mercury for

6

reuse. Honeywell also disposed of RCRA hazardous waste and non-hazardous waste and debris associated with facility operations. The removal action was completed in October 2004.

19. In June 2004, Honeywell initiated an Engineering Evaluation/Cost Analysis ("EE/CA") under a second EPA administrative order. Honeywell collected samples of air, surface water, groundwater, sediment, soil and biota. After Honeywell submitted the draft EE/CA, EPA decided to address the remaining contamination under its remedial authorities. In September 2009, EPA converted the project from an EE/CA to a Remedial Investigation/Feasibility Study ("RI/FS").

20. Honeywell discharged PCB-contaminated wastewater through pipes from its facility to a holding lagoon on International Paper property ("IP Cell No. 2"). International Paper planned to expand its landfill capacity by converting IP Cell No. 2 to landfill use. In September 2005, International Paper characterized the area. Based on findings from the characterization activities, EPA entered into an administrative order with Honeywell and International Paper for removal of PCB-contaminated sediment from IP Cell No. 2.

21. Contractors for Honeywell and International Paper constructed two temporary stockpiles on the Site, and excavated and transported 22,500 cubic yards of sediment from IP Cell No. 2 to the engineered stockpiles. These sediments

7

contained PCBs at concentrations equal to or greater than 50 mg/kg pursuant to Toxic Substances Control Act ("TSCA") regulations at 40 C.F.R. 761 *et seq.*, and are hazardous substances.

22. Honeywell began an RI/FS in September 2009 under a fourth EPA administrative order. It completed an RI Report on June 18, 2014, and a FS Report on September 7, 2016. Pursuant to Section 117 of CERCLA, 42 U.S.C. § 9617, EPA published notice of its proposed plan for remedial action on August 15, 2016. A public comment period ensued.

23. The decision by EPA on the remedial action to be implemented at the Site is embodied in a final Record of Decision ("ROD"), executed on September 29, 2017, on which the State of North Carolina has given its concurrence. The ROD includes EPA's responsiveness summary to the public comments.

24. The Site is a facility within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

25. Hazardous substances as defined in Section 101(14) of CERCLA, 42 U.S.C. § 9601(14), have been released at the Site, and/or there is a threat of such release at the Site, as defined by Section 101(22) of CERCLA, 42 U.S.C. § 9601(22).

26. The United States has incurred response costs for actions taken in response to the release or threat of release of hazardous substances with respect to the Site

8

through the date of filing of this complaint. The United States will continue to incur response costs in connection with the Site in the future.

27. The United States' response actions taken with respect to the Site and the costs incurred related to those actions are not inconsistent with the National Contingency Plan, which was promulgated under Section 105(a) of CERCLA, 42 U.S.C. § 9605, and is codified at 40 C.F.R. Part 300 et seq.

28. The Defendants are liable under Sections 107(a)(1), (a)(2), and/or (a)(3) of CERCLA, 42 U.S.C. §§ 9607(a)(1), (a)(2), (a)(3).

29. In the ROD, EPA determined that the response actions are necessary to abate a danger or threat with respect to soil and groundwater contamination at the Site.

## FIRST CLAIM FOR RELIEF

### (Cost Recovery by the United States under CERCLA Section 107, 42 U.S.C. § 9607)

30. Paragraphs 1 through 29 are realleged and incorporated herein by reference.

31. Under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), the Defendants are jointly and severally liable to the United States for all unreimbursed response costs incurred by the United States with regard to the Site through the date of filing of this complaint together with accrued interest. The United States is also entitled to a declaratory judgment that the Defendants are liable for response costs that will be

binding on any subsequent action or actions to recover further response costs (other than such costs as are already being reimbursed to EPA) to be incurred by the United States with respect to the Site.

## SECOND CLAIM FOR RELIEF

### (Injunctive Relief under CERCLA Section 106, 42 U.S.C. § 9606)

32. Paragraphs 1 through 29 are realleged and incorporated herein by reference.

33. The President, through his delegate, has determined that there may be an imminent and substantial endangerment to the public health or welfare or the environment because of a release of hazardous substances or a threatened release of hazardous substances at and from the Site.

34. Pursuant to Section 106(a) of CERCLA, 42 U.S.C. § 9606(a), the Defendants are jointly and severally liable to perform the remedial actions identified in the ROD, including amendments thereto, which actions EPA has determined are necessary to abate a danger or threat with respect to groundwater, soil, surface water, and sediment contamination at the Site.

## THIRD CLAIM FOR RELIEF

### (Performance of Response Actions under RCRA Section 7003, 42 U.S.C. § 6973)

35. Paragraphs 1 through 29 are incorporated herein by reference.

36. Section 7003(a) of RCRA, 42 U.S.C. § 6973(a), provides in pertinent part:

> [U]pon receipt of evidence that the past or present handling, storage, treatment, transportation or disposal of any solid waste or hazardous waste may present an imminent or substantial endangerment to health or the environment, the Administrator may bring suit on behalf of the United States . . . against any person . . . to restrain such person from such handling, storage, treatment, transportation, or disposal, to order such person to take such other action as may be necessary, or both.

37. Solid wastes and/or hazardous wastes, as defined in Section 1004 of RCRA, 42 U.S.C. § 6903, are present at the Site.

38. Defendants' handling, storage, treatment, transportation, or disposal of solid and/or hazardous waste at the Site may present an imminent and substantial endangerment to health or the environment.

39. Defendants are liable for certain actions at the Site in order to abate the danger or threat to health or the environment, pursuant to Section 7003 of RCRA, 42 U.S.C. § 6973.

## PRAYER FOR RELIEF

WHEREFORE, the United States respectfully requests that the Court:

1. On the First Claim for Relief, enter judgment against the Defendants and in favor of the United States for all response costs incurred by the United States in connection with the Site;

2. On the First Claim for Relief, enter a declaratory judgment against the Defendants and in favor of the United States, pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), that the Defendants are liable for response costs, that will be binding on any subsequent action or actions to recover further response costs (other than such costs as are already being reimbursed to EPA) to be incurred by the United States with respect to the Site;

3. On the Second Claim for Relief, enter judgment against the Defendants and in favor of the United States ordering the Defendants to perform the response actions selected in the Record of Decision for the Site in order to abate the conditions at the Site;

4. On the Third Claim for Relief, order Defendants to take action necessary to abate the imminent and substantial endangerment to health or the environment pertaining to releases and threatened releases of solid and/or hazardous waste at the Site, pursuant to Section 7003(a) of RCRA, 42 U.S.C. § 6973(a);

5. Award the United States its costs of this action; and

6. Grant such other and further relief as the Court deems appropriate.

Respectfully submitted,

_____
JEFFREY BOSSERT CLARK
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice


_____
PATRICIA L. HURST
Senior Counsel
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Ben Franklin Station
Washington, D.C. 20044-7611
202-307-1242
Fax 202-514-0097
Patricia.Hurst@usdoj.gov
D.C. Bar No. 438882

ROBERT J. HIGDON, JR.
U.S. Attorney
Eastern District of North Carolina

/s/ Neal I. Fowler

NEAL I. FOWLER
Assistant U.S. Attorney
Office of the U.S. Attorney
Eastern District of North Carolina
310 New Bern Avenue
Federal Building, Suite 800
Raleigh, North Carolina 27601-1461
919-856-4049
Fax 919-856-4487
Neal.Fowler@usdoj.gov
State Bar No. 27371

Attorneys for Plaintiff
United States of America


OF COUNSEL:

CHRISTOPHER COLE
Associate Regional Counsel
U.S. Environmental Protection Agency, Region 4
61 Forsyth Street SW
Atlanta, GA 30303

14